**Edwina G. IBARRA, Plaintiff,**

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.**

**No. CIV 99–6149–JO.**

United States District Court, D. Oregon.

April 3, 2000.

Ralph Wilborn, Ralph Wilborn & Etta L. Wilborn, Tucson, AZ, Tim D. Wilborn, Portland, OR, for plaintiff.

William W. Youngman, Assistant United States Attorney, Portland, OR, Lucille G. Meis, Social Security Admin., Office of General counsel, Seattle, WA, for defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Claimant Edwina Ibarra seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, this court concludes that the Commissioner's decision must be remanded in accordance with this opinion.

## ADMINISTRATIVE HISTORY

Claimant protectively filed concurrent applications for DIB and SSI on May 15, 1995, alleging disability due to combined mental and physical impairments since February 23, 1993. The applications were denied initially and on reconsideration. After a hearing on August 19, 1997, in which claimant (who was not represented), a social worker, and a vocational expert testified, the ALJ issued a decision denying benefits. The ALJ's decision became the final decision of the Commissioner on June 10, 1999, when the Appeals Council declined review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such rele-vant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala,* 999 F.2d 1411, 1413 (9th Cir.1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. *See* 20 C.F.R. §§ 404.1520 and 416.920. The ALJ first determined that claimant had not engaged in substantial gainful activity since November 30, 1992. The ALJ also determined that claimant had acquired sufficient quarters of coverage to remain insured through at least June 30, 1998.

Second, the ALJ found that claimant has severe impairments in the form of status-post laceration and nerve injury to her right forearm, tendonitis bilaterally, bipolar disorder, a history of polysubstance abuse in apparent remission, and an anxiety disorder NOS, but that claimant's impairments are neither listed nor medically equal to any listed impairments in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1.

In the next step of the evaluation, the ALJ determined that claimant retains the residual functional capacity to perform the exertional demands of light work, diminished by significant non-exertional limitations that restrict her from performing repetitive keyboard work or repetitive fine motor work with her hands, working in a stressful environment, working at jobs involving interaction with the general public or collaborating with the efforts of others, and which limit her to simple, routine work. In making that determination, the ALJ found claimant's statements concern-

ing her impairments and their impact on her ability to work to be generally credible, to the extent incorporated into his second hypothetical question to the vocational expert. (Tr. 32.)

The ALJ next determined that claimant cannot return to her past relevant work. Based upon the testimony of the vocational expert and considering claimant's age, educational background, work experience, and residual functional capacity, the ALJ found that claimant is capable of making an adjustment to unskilled or entry level work that exists in significant numbers in the national economy, including employment as a circulation clerk and surveillance systems monitor. Accordingly, the ALJ found claimant not to be disabled as defined by the Social Security Act, and denied her applications for benefits.

## DISCUSSION

The Commissioner concedes that the ALJ erred. The parties disagree, however, as to the appropriate remedy. According to the Commissioner, remand for further proceedings is necessary to permit the ALJ to present an accurate hypothetical question to the vocational expert. In so arguing, the Commissioner acknowledges that the ALJ made inconsistent findings and overlooked functional limitations that the ALJ himself evidently accepted when formulating his hypothetical questions, thus yielding vocational testimony of no evidentiary value.

Claimant, in turn, argues that the case must be remanded for an award of benefits pending further proceedings to develop the issue of her failure to comply with prescribed treatment. Claimant contends that this result is mandated by Social Security Ruling ("SSR") 82–59, which, according to claimant, the Commissioner failed to properly apply. Because I conclude that my decision turns on the proper application of SSR 82–59, I do not reach claimant's remaining arguments.

The "failure to follow prescribed treatment" issue arose in this case as follows. Claimant has a diagnosed bipolar affective disorder, which is her most serious problem. (Tr. 26.) The record reflects that claimant also has a history of serious substance abuse, including marijuana and methamphetamine abuse, which greatly exacerbated the claimant's mental instability. Since December 1996, however, claimant's substance abuse has been in remission.

The record also reflects that for a number of years, claimant was prescribed and took a medication, Klonopin, for her bipolar condition. By the time of the August 1997, hearing, however, she had not taken Klonopin or any other medication specifically prescribed for her bipolar condition for a year, although she takes medication for symptoms of schizophrenia and anxiety. (Tr. 61–62.)

During the hearing, in response to the ALJ's inquiry as to what claimant feels "most interferes with your ability to work or not," claimant testified

> Well, I've * * * been diagnosed with bipolar disorder and, and that's the, greatest diagnosis * * *. I try to work and I * * * go in with a positive attitude, 100%. I can make it. I can do it. I'm going to work. I'm going to do really great and then I end up in my— the opposite end of depression and I, I can't show up for work. I, I go into a— I, I sleep for three or four days. I, I can't—I get so depressed that I, I don't even go out of the house. It causes, it causes a lot of trouble for me.

(Tr. 60.) The ALJ incorporated that testimony in the first hypothetical question posed to the vocational expert, and, although the transcript describes part of the vocational expert's answer as "inaudible" (Tr. 76), the parties seem to agree that the vocational expert opined that under the circumstances claimant described, she would be unemployable. (See Tr. 75–76.)

In his decision, the ALJ focused on the fact that at the time of the hearing, claimant's substance abuse was in remission and she was not taking any medication for her bipolar disorder. The ALJ expressed the

view that if claimant would obtain and follow a treatment regimen, her bipolar condition "would not meet the duration requirement of 12 consecutive months * * *." (Tr. 26.) Apparently based upon that belief, the ALJ stated the following:

> When asked to assume the existence of an individual of the claimant's age, education and past relevant work, who is limited by cycles of mental depression occurring about twice per month, which render her nonfunctional for 3 to 4 days, the vocational expert testified that such an individual would not be able to perform any work. However, as discussed above, this level of limitation is presently ameliorated by the claimant's sobriety and avoidance of substance abuse. Moreover, at the time of hearing claimant was not following any medication regiment for her bi-polar condition. Adherence to such an appropriate medication regiment would likely substantially improve her overall functioning.

(Tr. 30.)

The ALJ did not expressly purport to deny claimant benefits on the ground that she failed to follow prescribed treatment, *see* 20 C.F.R. §§ 404.1530 and 416.930, but his comments, quoted above, and his ultimate finding that claimant is not disabled rest, in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her condition to be worse than it might otherwise be. Consequently, SSR 82–59, which sets forth the Commissioner's required criteria for a finding of failure to follow prescribed treatment when evaluating disability, appears to govern this case.

The social security regulations provide that to be entitled to receive disability benefits, a claimant "must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. §§ 404.1530(a) and 416.930(a). If a claimant does not follow prescribed treatment, then (subject to certain exceptions)

the Commissioner "will not find [the claimant] disabled * * *." *Id.* at (b).

SSR 82–59 delineates the circumstances in which the Commissioner can deny benefits on the basis that the claimant has failed to follow prescribed treatment. A finding of "failure to follow prescribed treatment" may be made only when the following criteria are met:

1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) * * *; and

2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and

3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and

4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

SSR 82–59.

In this case, the vocational expert's response to the ALJ's first hypothetical question, which incorporated claimant's bouts of depression, satisfied the first criterion, in that the expert opined that under the circumstances claimant described, she would be unemployable.[1] Moreover, the record plainly demonstrates that her condition satisfies the duration requirement of the second criterion.

Neither the third nor the fourth criterion, however, is satisfied. Nothing in the record supports an inference that claimant has been prescribed a treatment that she has refused to follow. To the contrary, the medical record supports claimant's testimony that at the time of the hearing, she had been taken off medication for the bipolar condition while her substance abuse problem was addressed, and that a new

---

1. Notably, the ALJ did not make any findings that suggest that he rejected claimant's testimony on this point.

treatment plan was under consideration but had not yet been started. (*See* Tr. 60–63; 390, 392). Consequently, the ALJ's apparent finding that claimant had failed to follow a prescribed treatment was erroneous.

This leaves the question of the appropriate remedy. In the situation presented here, SSR 82–59 mandates the following:

> Where [the Commissioner] believes that treatment might restore an individual's ability to engage in any SGA (or gainful activity, as appropriate), but no treating source has prescribed such treatment, a determination of allowance will be made, and the DDS will refer the individual to [vocational rehabilitation].

The Ninth Circuit has explained that the procedures mandated by SSR 82–59 apply only to claimants who "would otherwise be disabled within the meaning of the Act." *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.1995). Although the ALJ did not make an express finding that claimant would otherwise be disabled, his decision as a whole leaves no doubt that he premised the denial of benefits solely on his belief that claimant's condition could be ameliorated by sobriety and a prescribed treatment regimen.

Although the law in this area is by no means clear, I conclude that under the circumstances in this case, the regulations require remand for an immediate payment of benefits and for proper development, under the procedures mandated by SSR 82–59, of the issue of claimant's failure to follow prescribed treatment or the availability of a treatment program.

## CONCLUSION

For the reasons stated, this case is RE-MANDED for immediate payment of benefits and for further proceedings in accordance with SSR 82–59.