**Monica ROBERTS, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health & Human Services, Defendant–Appellee.**

No. 93–35806.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1995.

Memorandum June 13, 1995.

Order and Opinion Sept. 14, 1995.

As Amended Oct. 23, 1995.

was again denied and she again requested a hearing. The second ALJ issued a decision in October 1991 denying Roberts's application. The Appeals Council then denied a request for review, rendering the second ALJ's decision the final determination of the Secretary. Roberts then sought review in the district court for the District of Oregon. That court had jurisdiction under 42 U.S.C. § 405(g). A magistrate judge made findings and recommendations, which the district judge adopted by order dated August 2, 1993. Roberts filed a timely notice of appeal from that order, and this court has jurisdiction under 28 U.S.C. § 1291.

Ralph Wilborn, Ralph Wilborn and Etta L. Wilborn, Eugene, OR, for plaintiff-appellant.

Kathryn A. Warma, Department of Health and Human Services, Seattle, WA, for defendant-appellee.

Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.

### ORDER

The memorandum disposition filed June 13, 1995, is redesignated as an authored opinion by Judge Hall.

### OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

Monica Roberts, who is in her mid-thirties, suffers from morbid obesity, arthritis, and various mental and emotional impairments including depression. She has one child and lives on public assistance. She applied for SSI benefits on the basis of alleged disability in 1989 and her application was denied. She requested a hearing. The administrative law judge (ALJ) remanded for consideration of Roberts's mental disorder. Her application

### I.

Monica Roberts was born in 1960 and lives with her six-year-old daughter in a second floor apartment. She has a high school education, as well as one and one-half years of college. She has worked as farrier[1] and a secretary. She suffers knee pain and slightly limited motion in both knees because of arthritis that is amplified by her morbid obesity. Several doctors have advised her to lose weight, but she has been unable to lose any substantial amount and keep it off. She suffers from depression. She also has a history of head injury and loss of consciousness due to an abusive relationship. She claims that concentrating and thinking have been difficult since sustaining the head injuries.

Roberts applied for disability benefits on July 26, 1989. She initially claimed disability due to arthritis in both knees and various mental and emotional impairments. Her claim was denied initially and upon reconsideration; the denial was vacated and remanded for further evaluation of her mental disorder; her claim was again denied, and Roberts requested a second hearing before an ALJ. Between the date she first filed her application and the date of her second hearing before an ALJ, Roberts gained approximately forty pounds, and at her second hearing, weighed 317 or 318 pounds and claimed disability due to obesity.

---

1. A farrier is someone who shoes horses.

In October 1990, Roberts was examined by Dr. Robert Kurlychek, a neuropsychologist, who completed a questionnaire regarding Roberts's mental residual functional capacity. Dr. Kurlychek did not treat Roberts for any of her mental or emotional conditions. At Roberts's second hearing, the ALJ called Dr. Peter Moulton, a psychologist, as a consultative medical advisor. Dr. Moulton examined Roberts's medical records, including objective test data gathered by Dr. Kurlychek, and rendered an opinion regarding Roberts's mental residual functional capacity that differed from the opinion given by Dr. Kurlychek.

The ALJ found that Roberts was not disabled due to obesity because, even if she did have reduced mobility in her knees, she had not met the duration requirement for obesity. The ALJ also found that Roberts was not disabled because she retained a mental residual functional capacity that would allow her to perform other work.

Roberts requested review by the Appeals Council. The Appeals Council denied the request, rendering the second decision by the ALJ the final decision of the Secretary. Roberts then sought review in the district court. The magistrate issued findings and recommendations in April 1993, which the district court adopted by order in August 1993. Roberts now appeals from the judgment entered pursuant to that order.

## II.

■ This Court reviews the district court's order affirming the Secretary's denial of benefits de novo, *Travers v. Shalala,* 20 F.3d 993, 995–96 (9th Cir.1994), to ensure that the Secretary's decision was supported by substantial evidence and a correct application of the law. *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir.1993).

## III.

■ Roberts argues that the ALJ erred in failing to find her presumptively disabled due to obesity. We disagree.

■ An individual is disabled within the meaning of the Social Security Act when she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.909. The claimant bears the burden of establishing a prima facie case of disability. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir.1992). This burden requires the claimant to make out a case both that she has an impairment listed in the regulations, and that she has met the duration requirement. *See* 20 C.F.R. § 416.920(d).

The Secretary's decision that Roberts was not disabled due to obesity was supported by substantial evidence because Roberts failed to carry the burden of showing that she met the duration requirement. The regulations provide that a woman of Roberts's height is presumptively disabled if she weighs at least 298 pounds [2] and suffers from one of several other conditions, one of which is a history of pain and limitation of motion in any weight bearing joint. 20 C.F.R. § 404 app. 1, § 9.09(A). Roberts's medical records indicate that she first met the listed weight requirement on September 17, 1990. On this date she weighed 302 pounds. On April 16, she weighed 316 pounds.

Thus, when the ALJ conducted his hearing in May, 1991, Roberts had presented evidence that she met the listed weight requirement for only seven months. She presented no evidence that her weight would likely remain continuously above 298 lbs. for twelve months. She argues in her brief on appeal that "[b]etween September 17, 1990, and October 11, 1991, when the ALJ's decision was issued, more than 12 months had passed with no evidence that Plaintiff had lost weight." This argument misses the point. Roberts bears the burden of establishing that she met the duration requirement. She cannot discharge this burden by asserting in an appellate brief that no evidence revealed that her condition changed after the record in the case closed. We therefore affirm the Secre-

---

**2.** 20 C.F.R. § 404 app. 1, § 9.09 tbl. II.–Women. At the time the ALJ made his decision, this same table appeared at 20 C.F.R. § 404 app. 1, § 10.10 tbl. II–Women.

tary's decision that Roberts was not disabled due to obesity.[3]

## IV.

■ Roberts next argues that Social Security Ruling 82–59 entitles her to benefits. Social Security Ruling 82–59 delineates the circumstances in which the Secretary can deny benefits on the basis that the claimant has failed to follow prescribed treatment. *See* 20 C.F.R. § 416.930. For instance, the ruling states that the claimant should be given an opportunity to explain why she has failed to follow treatment, that the treating physician should be contacted to clarify the treatment the claimant was told to follow, and that the claimant will be notified of the possibility of denial on this basis prior to her hearing. Roberts argues that the Secretary did not afford her the protections set forth in SSR 82–59 and that she is therefore entitled to benefits.

■ The procedures that SSR 82–59 mandates, however, only apply to claimants who would otherwise be disabled within the meaning of the Act. As discussed above, Roberts would not otherwise be disabled due to obesity because she failed to meet the duration requirement. Thus, she had no right to enjoy the protections of SSR 82–59 because the Secretary did not premise the denial of her benefits solely on Roberts's failure to follow prescribed treatment.

The ALJ's decision clearly rests on Roberts's failure to meet the duration requirement. In his written decision, the ALJ concluded that "the duration required of the listings has not been met." He then went on to note, citing 20 C.F.R. § 416.930, that even if the requirement had been met, the record does not reveal "any medical reason why the claimant cannot lose weight," and that "[c]onsequently, her obesity cannot be found to be a disabling condition." His discussion of Roberts's failure to lose weight was unnecessary. We therefore decline to address whether the ALJ afforded Roberts the protections SSR 82–59 provides and reject the argument that any alleged violation entitles her to benefits.

## V.

■ Roberts next argues that SSR 85–15, which supplements regulations providing the manner in which the Secretary will evaluate disability claims when the claimant suffers only "nonexertional" impairments, requires an award of benefits. *See* SSR 85–15 at 543 (the purpose of the ruling is "to clarify how the regulations . . . provide a framework for decisions concerning persons who have only a nonexertional limitation(s) of function or an environmental restriction(s)."). We conclude that this ruling does not require an award of benefits.

SSR 85–15 has no application to Roberts because she claims both exertional and nonexertional impairments, whereas SSR 85–15 provides guidance only for cases in which the claimant asserts "solely nonexertional impairments." SSR 85–15 at 543. Nonexertional impairments include, for example, the ability to reach, seize, or hold. *Id.* at 545. Furthermore, "[m]ental impairments are generally considered to be nonexertional. . . ." *Id.* Roberts, however, also claims exertional impairments. At her hearing, for instance, she testified that pain in her knees limited her ability to sit, stand, walk, and lift, and that she could only walk for two or three blocks at a time.[4] SSR 85–15 is therefore inapplicable and does not require an award of benefits.

## VI.

■ Roberts next argues that the ALJ failed to set forth "clear and convincing" reasons for rejecting Dr. Kurlychek's conclusion regarding Roberts's mental residual function capacity, and that, therefore, the Secretary's decision is not supported by sub-

---

3. We note, however, that if Roberts's weight has in fact remained above the listed weight requirement for the required twelve months, she is free to file a new claim. We regret the delay our decision today may create, but as an appellate court, we simply cannot look beyond the record as it existed before the ALJ when he rendered his decision.

4. She also at one time had told a doctor that she could walk ten blocks, and at another time, that she could walk twenty-two blocks.

stantial evidence. We reject this argument as well.

■ An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995). We conclude that the ALJ in this case met his burden.

The ALJ noted with particularity that the medical expert, Dr. Moulton, disagreed with several of Dr. Kurlychek's ratings under the Mental Residual Function Capacity Assessment. He further noted that "[t]he basis for the medical expert's disagreement with Dr. Kurlychek's conclusions were the claimant's neuropsychological test scores." Based on these test results, the ALJ concluded that "the medical expert's testimony is correct and that Dr. Kurlychek's MRFC is in irreconcilable conflict with his written report and test results," and adopted the opinion of the medical expert.

The ALJ's justification for adopting the medical expert's testimony was specific and legitimate. Moreover, the decision was based on test results contained in the record, which constituted substantial evidence. We therefore hold that the Secretary's determination that Roberts was not disabled due to her mental and emotional impairments was supported by substantial evidence.

## VII.

■ Finally, Roberts argues that the Secretary failed to carry her burden of showing that Roberts can engage in substantial gainful activity other than her previous work. We also reject this argument. Once a claimant shows that she cannot perform past relevant work, the burden shifts to the Secretary to show that the claimant can engage in other substantial gainful activity. *See* 20 C.F.R. § 416.920(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993). The Secretary can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir.1989).

Here, the ALJ propounded a hypothetical to vocational expert Stephen Van Houten based on Roberts's limitations as assessed by Dr. Moulton. Roberts argues that it was error to base the hypothetical on Dr. Moulton's testimony, because that testimony did not accurately reflect her true mental and emotional impairments.

Although Roberts did offer alternate hypotheticals at the hearing, the ALJ was still free to ask the vocational expert to base his conclusions on the testimony of Dr. Moulton, the consultative physician.

> The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. Rather, the ALJ is "free to accept or reject these restrictions ... as long as they are supported by substantial evidence." This is true even where there is conflicting medical evidence.

*Magallanes*, 881 F.2d at 756–57 (quoting *Martinez v. Heckler*, 807 F.2d 771, 773–74 (9th Cir.1986)) (citations omitted).

As discussed above, Dr. Moulton's conclusions are supported by substantial evidence. A hypothetical based on these conclusions was therefore sufficient to satisfy the Secretary's burden of proving that Roberts was capable of engaging in other work. Roberts argument therefore fails.

## CONCLUSION

We affirm the judgment of the district court, which affirmed the final decision of the Secretary denying Roberts's application for Social Security benefits.

AFFIRMED.