**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLABURN M. LOCKWOOD, | No. 09-35546 |
| Plaintiff - Appellant, | D.C. No. 3:07-cv-01838-KI |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Garr M. King, Senior District Judge, Presiding

Argued and Submitted May 3, 2010
Portland, Oregon

Before: KLEINFELD, BEA, and IKUTA, Circuit Judges.

Claburn Lockwood appeals from the district court's order that affirmed the

Commissioner of the Social Security Administration's final decision to deny

Lockwood's applications for disability insurance benefits and supplemental

security income. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1. The ALJ did not fail adequately to develop the record. The denials of Lockwood's previous applications for disability insurance benefits and supplemental security income were in the record on which the ALJ relied, as were the records on which those denials were based. The ALJ's duty to obtain medical records from Dr. Loeb was not triggered because the evidence in the record was not ambiguous, the ALJ did not find the record inadequate, and the ALJ did not rely on the opinion of any medical experts who concluded the evidence was ambiguous or inadequate. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Even if the ALJ's duty to obtain records from Dr. Loeb were triggered, the ALJ satisfied the duty by giving Lockwood's attorney the opportunity to obtain the records. *See id.* ("The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, . . . continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.").

2. The ALJ did not err when she failed to mention in her decision the opinion of Dr. Kaur-Jayaram, who treated Lockwood for lower back pain. An ALJ need not discuss evidence that is not significant or probative. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Dr. Kaur-Jayaram's opinion that Lockwood suffered from incapacitating back pain and should be given time off and part-time work until her

condition was "sorted out" was not probative because it pre-dated Lockwood's alleged disability onset date by more than eighteen months and pre-dated a successful back surgery.

Nor did the ALJ err when she gave little weight to the opinion of treating orthopedist Dr. Moller, who performed multiple knee surgeries on Lockwood. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2003). Dr. Moller's opinion that Lockwood was unable to perform regular work from March 2001 until April 2002 was conclusory, brief, and unaccompanied by an explanation.

3. The ALJ did not commit reversible error when she found Lockwood's lack of compliance with treatment undermined her testimony regarding the severity of her symptoms. The ALJ was not required to apply Social Security Ruling ("SSR") 82-59. An ALJ must follow the procedures mandated by SSR 82-59 only if the applicant would otherwise be disabled within the meaning of the Act. *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). Because the ALJ concluded that Lockwood was not disabled, SSR 82-59 is inapplicable. The ALJ did not use noncompliance as an independent basis for denial.

3

The ALJ erred when she relied on Lockwood's lack of compliance with treatment as one reason to discount Lockwood's testimony with respect to the severity of her symptoms because the ALJ failed to discuss the possible reasons for the noncompliance, such as the side effects of her medication—dizziness and drowsiness. *See* SSR 96-7p; *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). However, this error was harmless because the ALJ's other reasons for finding Lockwood not credible were sufficient and were supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162–63. For example, the ALJ explained Lockwood's active lifestyle was not consistent with her claims of debilitating pain, depression, and an inability to sit, stand, or walk for more than brief periods. The ALJ also explained Lockwood had a poor work history even prior to her alleged disability onset date.

4.     The ALJ adequately explained her decision to discount portions of James McCormick's lay witness statement. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (holding that an ALJ cannot discount the testimony of a lay witness unless the ALJ gives reasons germane to that witness). Here, McCormick wrote that Lockwood was limited in the amount of time she could walk and stand during the day. The ALJ discounted this statement because it was not consistent with

4

Lockwood's active lifestyle, which included traveling, biking, housework, gardening, yoga, swimming, dancing, and hula-hooping.

The ALJ erred when she failed to discuss Barbara Hermens's lay witness statement. Harmless error analysis applies when an ALJ disregards a lay witness's testimony without comment. *Id.* at 1054 ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to a claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). Here, the ALJ's error was harmless because even if the ALJ had fully credited Hermens's statement, the ALJ would not have altered her finding with respect to Lockwood's residual functional capacity. Hermens's statement was internally inconsistent: she explained that Lockwood can no longer take bike trips, does not take walks because of her knee surgery, and does not get any other type of exercise, but she also explained that Lockwood cannot drive due to her bad back and, thus, gets around by walking, biking, and busing. Further, nothing in Hermens's statement directly contradicts the ALJ's finding with respect to Lockwood's residual functional capacity.

5.     The ALJ did not commit reversible error when she failed to make an explicit finding as to whether Lockwood had bipolar disorder. Even if we assume that the

5

omission constituted legal error, "it could only have prejudiced [Lockwood] in step 3 (listing impairment determination) or step five (RFC) because the other steps, including [step 2], were resolved in her favor." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Lockwood was not prejudiced at Step 3 because she satisfied none of the paragraph B criteria[1] and, thus, her bipolar disorder did not meet or equal a listed impairment. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.04B. Further, Lockwood was not prejudiced at Step 5 because the ALJ considered the effect Lockwood's depressive disorder had on her residual functional capacity. Lockwood identified no functional limitations posed by bipolar disorder that the ALJ did not already consider with respect to Lockwood's depressive disorder. *See Burch*, 400 F.3d at 684 (holding that the ALJ adequately considered the claimant's impairment where the claimant "ha[d] not set forth, and there [was] no evidence in the record, of any functional limitations as a result of [the impairment] that the ALJ failed to consider").

**AFFIRMED.**

---

[1] Paragraph B is satisfied when a claimant proves an impairment results in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]" 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.04B.

6